1     IN THE UNITED STATES DISTRICT COURT
2     FOR THE NORTHERN DISTRICT OF ILLINOIS
      WESTERN DIVISION

3  UNITED STATES OF AMERICA,        )      Docket No. 09 CR 50034
                                    )
4                 Plaintiff,        )      Rockford, Illinois
                                    )      Thursday, October 14, 2010
5            v.                     )      10:30 o'clock a.m
                                    )
6  OSIC PUCKETT,                    )
                                    )
7                 Defendant.        )

8              TRANSCRIPT OF PROCEEDINGS
      BEFORE THE HONORABLE FREDERICK J. KAPALA

9
   APPEARANCES:
10
   For the Government:          HON. PATRICK J. FITZGERALD
11                              United States Attorney
                                (308 West State Street,
12                               Rockford, IL  61101) by
                                MR. MARK T. KARNER
13                              Assistant U.S. Attorney

14 For the Defendant:          SREENAN & CAIN
                                (321 West State Street,
15                               Suite 803,
                                 Rockford, IL  61101) by
16                              MR. DANIEL J. CAIN

17 Court Reporter:             Mary T. Lindbloom
                                211 South Court Street
18                              Rockford, Illinois  61101
                                (815) 987-4486
19

20

21

22

23

24

25

1      MR. CAIN:  Your Honor, may we discuss a scheduling

2  matter?

3      THE COURT:  Sure.

4      MR. CAIN:  As you're aware, Mr. Puckett intends to

5  change his plea before you today.  May I take five minutes or so

6  with Mr. Karner, please, to discuss a couple of matters that

7  shouldn't take very long at all?

8      THE COURT:  Sure.

9      MR. CAIN:  Thank you very much.  We'll return in five,

10  ten minutes.  Is that all right?

11      THE COURT:  All right.

12      MR. CAIN:  Thank you.

13    (Brief recess.)

14      THE CLERK:  09 CR 50034-1, U.S.A. v. Puckett.

15      MR. KARNER:  Good morning, your Honor.  Mark Karner on

16  behalf of the United States.

17      MR. CAIN:  Good morning, your Honor.  Dan Cain with

18  Mr. Puckett before you today.

19      MR. KARNER:  Judge, we're here to present a change of

20  plea.  I have made changes to the draft that was sent to your

21  Honor yesterday, some typos and some reorganization.  So, I'd

22  ask that your Honor refer to the signed copy that's been

23  presented to the court.

24      Now, having said that, Mr. Cain informs me that the

25  defense no longer wishes to enter a conditional plea and reserve

PDF created with pdfFactory trial version www.pdffactory.com

1  the right to challenge the court's September 23rd motion to

2  suppress.  I just learned that a little while ago, or else the

3  written plea would have reflected otherwise.

4          MR. CAIN:  Your Honor, what Mr. Karner stated to you is

5  accurate.  I originally advised Mr. Karner that we wanted to

6  reserve our right pursuant to the conditional plea provision of

7  Rule 11.  I explained all that to Mr. Puckett.  Mr. Puckett

8  advised me that he did not want to enter into a plea relating to

9  your pretrial ruling.  I fully intended to advise Mr. Karner of

10  that.  I failed to do it.  So, this is my fault.  But having

11  said that on the record, your Honor, I don't believe that that

12  impairs our ability to proceed today in any regard.

13          THE COURT:  Well, paragraph 15 would just be

14  ineffective then?

15          MR. KARNER:  Yes.  Well, and also the very first

16  paragraph that makes reference to this plea being governed by

17  Rule 11(a)(2) would also have to be stricken.

18          MR. CAIN:  I agree with that, your Honor, and I

19  believe, therefore, that this plea is governed by

20  Rule 11(c)(1)(B) and that the terms of the plea agreement,

21  therefore, are in their entirety reflected in the plea agreement

22  itself.

23          THE COURT:  (c)(1)(B) means the government's going to

24  make a recommendation, doesn't it?

25          MR. CAIN:  Only to the extent that they have, your

PDF created with pdfFactory trial version www.pdffactory.com

1  Honor, in the plea agreement which --

2  MR. KARNER:  Is a guideline sentence.

3  MR. CAIN:  -- is a guideline sentence and to which

4  they, consistent with their words in the plea agreement, take

5  the position that they do at this time relating to guideline

6  calculations and acceptance of responsibility and timely

7  notification.

8  THE COURT:  Okay.

9  MR. CAIN:  Now, there's no promises made to Mr. Puckett

10  or myself other than that which is contained in the agreement,

11  so that the writing itself is the only agreement that we have.

12  MR. KARNER:  Well, we are not bound by the guideline

13  calculations in the plea agreement.  We're bound to make a

14  recommendation within the applicable sentencing guidelines as

15  ultimately determined by the court at the recommendation of the

16  United States Probation Office.  This is our best estimate of

17  the guideline calculations at this time.

18  MR. CAIN:  Yes, I agree with that, and again just

19  reassert that that's all specified in the appropriate paragraph

20  of the plea agreement.

21  THE COURT:  I'd like to take things out of order, if I

22  could, and just so we're entering into this plea agreement fully

23  aware of what's going to happen and so Mr. Puckett does whatever

24  he's going to do with his eyes open, I'd like to talk about the

25  supplemental motion for sentencing release.

1     MR. CAIN:  Yes, sir.  Can we speak -- there's two

2  motions that I have filed.

3     THE COURT:  I thought the supplemental one replaced the

4  first one.

5     MR. CAIN:  No, sir.  The supplemental was intended to

6  be in addition to or in supplement of.

7     THE COURT:  All right.  So, we can take both of them

8  Here's my analysis.  It's a little disjointed.  I have pieces of

9  paper and notes that I wrote to myself that I'll try to put

10 together for you.  I think when Mr. Moore was here last time

11 with Mr. Puckett, I explained to him how --

12    MR. CAIN:  I received the transcript of that, your

13 Honor.

14    THE COURT:  So, you're familiar with that.

15    MR. CAIN:  Yes, sir, I am

16    THE COURT:  If Mr. Puckett -- if I had an assurance

17 that Mr. Puckett was safety valve eligible, I think I would

18 analyze his presentencing release under 3143(a)(1) instead of

19 (a)(2), and then I would have some discretion if I could find by

20 clear and convincing evidence that he is not likely to flee or

21 pose a danger to the safety of any other person or the

22 community.  If he's not safety valve eligible, then I think the

23 minimum sentence in this case would bring us under 3143(a)(2)

24 which removes my discretion, and he would have to be remanded.

25 In the supplemental motion for pretrial release, you reference

1    Judge Reinhard's practice --

2         MR. CAIN:  Yes, sir, I did.

3         THE COURT:  -- of deferring the entry of a finding of

4    guilty.

5         MR. CAIN:  No, sir.  Deferring the entry of judgment

6    and conviction.  It's my understanding, your Honor, as I

7    indicated in the supplemental motion, that Judge Reinhard not

8    uncommonly -- not always, but not uncommonly, would accept a

9    plea of guilty and make that finding of the record, accept the

10   plea, set the matter for sentencing, and indicating that I will

11   enter the judgment of conviction at the time of the sentence, as

12   opposed to instanter, so that the defendant can remain on

13   presentencing release.  I have done my best to review the law

14   relating to it.  I see nothing about that practice that's

15   inconsistent with the law.

16        THE COURT:  Except 3143 doesn't speak to judgment of

17   conviction.  It speaks only to a person found guilty of an

18   offense.  What triggers the remand is that the person is found

19   guilty, not a judgment of conviction.

20        MR. CAIN:  Judge Reinhard, I believe, has for years

21   interpreted that to mean a judgment of conviction.

22        THE COURT:  You may have heard -- I don't know if you

23   were in the courtroom before when I --

24        MR. CAIN:  I was.

25        THE COURT:  And I have utmost respect for Judge

1    Reinhard, and I have the highest regard for his ability to

2    analyze issues and to read statutes and interpret decisions, but

3    I think in this instance we just disagree on how I would

4    interpret the law.  Bear with me, if you can.  This is the way I

5    analyze this case.

6            3143 says that a person who has been found guilty of an

7    offense shall be remanded if the case falls under subparagraph

8    two, which I think it does, except in a safety valve situation,

9    which would take it out of there.  But until I accept the plea

10   of guilty, it could be withdrawn at any time.

11           And so, under Rule 11(d) it says a defendant may

12   withdraw a plea of guilty before the court accepts the plea.

13   And so, in order to stop the running of the 70-day speedy trial

14   time, I would have to accept the plea.  Up until that time, he

15   could withdraw the plea any time he wanted, it says, for any

16   reason or no reason at all.  And what I would anticipate would

17   possibly happen is that we'd come to a week before the

18   sentencing hearing, if I hadn't accepted the plea of guilty, he

19   could make a motion to withdraw his plea for no reason at all,

20   and then I would be required under 11(d) to grant that motion,

21   and then five minutes after that he could file a motion to

22   dismiss because he wasn't tried within the speedy trial time.

23           And I know, Dan, that you would never break your word

24   to the government or the court.  I know that you would never

25   promise one thing and then do another, but the problem is

PDF created with pdfFactory trial version www.pdffactory.com

1    Mr. Puckett could at any time he wanted fire you and hire

2    another attorney that did not make that promise and would file

3    the motions that I'm talking about.  I do not want to be put in

4    that position.

5            Title 18, Section 3673, says the term found guilty

6    includes acceptance by the court of a plea of guilty.  So, in

7    order to stop the 70 days from running, I would have to accept

8    the plea of guilty.  If I accept the plea of guilty under 3673,

9    that's the same thing as entering a finding of guilty, and if I

10   find him guilty, then 3143 goes into operation, and I have no

11   discretion.  I don't believe that I can parse the judgment and

12   conviction the way that Judge Reinhard does.  And, as I've said,

13   3143 doesn't implicate a judgment and conviction.  It only talks

14   about a finding of guilty.

15           If you can show me a Court of Appeals decision that

16   suggests -- that authorizes the procedure that you're

17   suggesting, I'll be glad to look at it and exercise my

18   discretion as best I can, but I haven't found one, and it would

19   surprise me if you could, although I'd welcome a citation to a

20   case that says I can do it if you can give me one.

21           MR. CAIN:  May we speak to the safety valve matter?

22           THE COURT:  Sure.

23           MR. CAIN:  Judge, in my opinion Mr. Puckett stands here

24   before you absolutely eligible for safety valve consideration.

25           THE COURT:  But there's one thing in being eligible for

1    safety valve, and there's another thing by the government

2    telling me he will get safety valve treatment.  If all he is --

3    and we don't know whether he's eligible until he makes the

4    proffer.

5              MR. CAIN:  Respectfully, I disagree with that.

6              THE COURT:  Let's look at it.  What's the section?

7              MR. CAIN:  It's 3553(f).

8              THE COURT:  All right.  The defendant does not have

9    more than one criminal history point.  The defendant did not use

10   violence or credible threats of violence.  The offense did not

11   result in death or serious bodily injury.  The defendant was not

12   an organizer, leader, manager, or supervisor of others.  And not

13   later than the time of the sentencing hearing the defendant has

14   truthfully provided to the government all information and

15   evidence the defendant has concerning the offense or offenses

16   that were part of the same course of conduct or of a common

17   scheme or plan.

18             MR. CAIN:  And that's actually the exact status of this

19   matter before you at this time.  Certainly the government -- and

20   I can't speak for -- you know, I'm not trying to speak for

21   Mr. Karner, but as you can see from the plea agreement, there is

22   nothing in the plea agreement that is in any regard inconsistent

23   with paragraphs one, two, three, or four of 3553(f).  As to

24   paragraph five, the provision is absolutely clear.  It says not

25   later than at the time of sentencing the defendant has

PDF created with pdfFactory trial version www.pdffactory.com

1    truthfully made this proffer.  And, therefore, at this time

2    prior to sentencing, he certainly remains eligible to do that,

3    your Honor.  And so, as we speak, Mr. Puckett is a person who is

4    in a category of someone to whom the safety valve may apply,

5    which means that he is safety valve eligible.

6           THE COURT:  But there's a difference between being

7    safety valve eligible and getting safety valve treatment.  The

8    only way that this case moves out of the five-year minimum is if

9    I agree that the safety valve applies.  I can't do that yet

10   because I don't know whether he gets safety valve treatment.

11          MR. KARNER:  Well, and, Judge, I just feel out of duty

12   and candor to the court that we specifically asked if we should

13   include safety valve language in the plea, and we were told no,

14   and there's been no further discussions on scheduling a

15   debriefing to complete the requirements for the safety valve

16   eligibility.

17          MR. CAIN:  Well, in response to that, number one, the

18   plea agreement doesn't have to contain a provision relating to

19   whether or not there's safety valve eligibility.  That's a

20   matter of statute.

21          Number two, Mr. Karner is right that I have had no

22   discussions with him relating to Mr. Puckett's proffer, and I'm

23   not here to tell you that that necessarily is going to occur.

24   I'll tell you on the record it probably won't.  But the fact is

25   is that having said that, Mr. Puckett has the right to do that,

1   an absolute statutory right to make a proffer to the government

2   and then to seek safety valve benefits, and, therefore, I submit

3   to you that that means that he is safety valve eligible.

4          We would never know, your Honor -- even if he had

5   proffered already, we would never know whether or not the safety

6   valve provision applies until you say it does at sentence.  And

7   so, if you take the provision that all those requirements be

8   met, then being safety valve eligible, therefore, is totally

9   irrelevant to whether or not a person might be placed on

10  presentencing release because then the court would not have

11  ruled on the matter as to the applicability of the safety valve.

12         But as we are here now, Mr. Puckett is safety valve

13  eligible.  Whether or not he is going to obtain the benefits of

14  it depends upon future developments, certainly, and ultimately

15  your decision relating to his eligibility at a sentencing

16  hearing.

17         THE COURT:  It may be that my analysis on the safety

18  valve eligibility is wrong, and I proposed that as a possible

19  way of getting around the five-year minimum situation.

20  Although, if both parties committed themselves to agreeing that

21  the safety valve applies in this case, I would go along with it,

22  and I would determine at that point that there's not a five-year

23  minimum, but until the safety valve comes into play -- not just

24  an expectation, not just eligibility, but until it is a part of

25  this plea or a part of this case, Mr. Puckett is still subject

1    to a five-year minimum sentence, and we have to operate under

2    3143(a)(2).

3              MR. CAIN:   Judge, I understand your position.   I

4    disagree.

5              THE COURT:  All right.

6              MR. CAIN:   If I may make one more comment.

7              THE COURT:   Sure.

8              MR. CAIN:   Both Mr. Puckett and myself were here in the

9    previous case, that of codefendant Mr. Neely.   You permitted

10   Mr. Neely some time to make some phone calls and such things.

11   If you, respectfully, are going to deny our motions for

12   presentencing release, I would ask that Mr. Puckett be treated

13   in a similar fashion.

14             THE COURT:   Sure.   All right.   Why don't we take the

15   plea agreement, and why don't you strike paragraph 15 and strike

16   that language in the first paragraph that refers --

17             MR. KARNER:  Yes, sir.

18             THE COURT:   And then both of you can sign it or all

19   three of you can sign it.

20       (Brief pause.)

21             MR. KARNER:   Also on Page 10 of that plea, there's a

22   sentence -- the fourth sentence from the top needs to be

23   stricken.

24             THE COURT:   Go ahead and amend it and sign it.

25       (Brief pause.)

1       MR. KARNER:  That's been done, your Honor.

2       THE COURT:  Thank you.

3       By the way I spoke in terms of a five-year minimum

4  sentence.  It's not the minimum sentence.  It's the ten-year

5  maximum that triggers 3143, but I think my comments, my reasons,

6  is the same as applied to this case.

7       Mr. Cain, have you had sufficient time to review the

8  amended written plea agreement with your client?

9       MR. CAIN:  Yes, sir.  We're making the final initials

10  on the copy that we're going to retain and just need to get

11  Mr. Karner's initials.

12       THE COURT:  All right.

13    (Brief pause.)

14       MR. CAIN:  Yes, sir.  We have -- we're prepared to go

15  forward.

16       THE COURT:  Mr. Puckett, you understand that you're

17  leaving the decision as to the penalty up to my discretion

18  within the statute and in consideration of the United States

19  Sentencing Commission Guidelines?

20       DEFENDANT PUCKETT:  Yes, sir.

21       THE COURT:  I must put you under oath and ask you

22  questions about this matter.  I do this so that I can be sure

23  you understand what rights you are giving up and that you are

24  doing so voluntarily.  You may consult with your lawyer while I

25  am asking you questions, and I will interrupt the proceedings at

1    any point to allow you to talk to your lawyer.

2          If you do not understand any of my questions, you may

3    stop and ask me.  If you make any false statements while under

4    oath, the government has the right to use those statements

5    against you in a prosecution for perjury or false statement.  In

6    giving truthful answers to some of my questions, you will be

7    waiving your right not to testify against yourself, and some of

8    your answers will be incriminating.  Answer questions truthfully

9    and not merely to agree with me or to say what you might think I

10   would want to hear.  Do you understand all those things?

11         DEFENDANT PUCKETT:  Yes, sir.

12         THE COURT:  Would you raise your right hand?

13      (Defendant duly sworn.)

14         THE COURT:  Would you state your name, please?

15         DEFENDANT PUCKETT:  Osic Bernard Puckett.

16         THE COURT:  And how old are you?

17         DEFENDANT PUCKETT:  39.

18         THE COURT:  And what's your date of birth?

19         DEFENDANT PUCKETT:  2-27-71.

20         THE COURT:  Where do you live?

21         DEFENDANT PUCKETT:  5380 Oak Hill Court, Rockford,

22   Illinois.

23         THE COURT:  Are you married?

24         DEFENDANT PUCKETT:  No.

25         THE COURT:  How far did you go in school?

1              DEFENDANT PUCKETT:  Two years of college.

2              THE COURT:  What did you study?

3              DEFENDANT PUCKETT:  Just general studies.

4              THE COURT:  Do you have any difficulty reading or

5  writing?

6              DEFENDANT PUCKETT:  No.

7              THE COURT:  Are you in good physical health?

8              DEFENDANT PUCKETT:  Yes.

9              THE COURT:  Are you currently under the influence of

10  drugs or alcoholic beverages of any kind?

11              DEFENDANT PUCKETT:  No.

12              THE COURT:  Are you taking any medication?

13              DEFENDANT PUCKETT:  No.

14              THE COURT:  Have you ever been under the care of a

15  doctor or in a hospital for a mental illness or impairment?

16              DEFENDANT PUCKETT:  No.

17              THE COURT:  Have you ever been examined to determine

18  your competency to stand trial?

19              DEFENDANT PUCKETT:  No.

20              THE COURT:  Mr. Cain, do you have any doubt as to the

21  defendant's competence to plead guilty at this time?

22              MR. CAIN:  No, your Honor.

23              THE COURT:  The court finds that the defendant is

24  competent to offer a plea of guilty.

25              Mr. Puckett, have you had enough time to talk to

PDF created with pdfFactory trial version www.pdffactory.com

1    Mr. Cain, your attorney?

2            DEFENDANT PUCKETT:  Yes.

3            THE COURT:  And you've told him everything you know

4    about this case?

5            DEFENDANT PUCKETT:  Yes.

6            THE COURT:  Have you discussed the possible defenses to

7    the charge?

8            DEFENDANT PUCKETT:  Yes.

9            THE COURT:  And you've discussed with him whether you

10   wish a trial or whether you wish to plead guilty?

11           DEFENDANT PUCKETT:  Yes.

12           THE COURT:  Are you satisfied with the advice and

13   efforts of your attorney?

14           DEFENDANT PUCKETT:  Yes.

15           THE COURT:  Has any other attorney represented you in

16   this case?

17           DEFENDANT PUCKETT:  No.

18           THE COURT:  Have you relied upon any other attorney's

19   advice in deciding how you wish to proceed in this case?

20           DEFENDANT PUCKETT:  No.

21           THE COURT:  You are charged in an indictment.  If I

22   find it, I'll read it to you.  The indictment charges that on or

23   about July 24th, 2009, at Rockford, in the Northern District of

24   Illinois, Western Division, and elsewhere, you and your

25   codefendant, Troy Neely, defendants herein, did conspire with

PDF created with pdfFactory trial version www.pdffactory.com

1   each other and with others known and unknown to the grand jury

2   knowingly and intentionally to possess with intent to distribute

3   a controlled substance, namely, 100 kilograms or more of

4   mixtures containing marijuana, a Schedule I controlled

5   substance, in violation of Title 21, United States Code, Section

6   841(a)(1), all in violation of Title 21, United States Code,

7   Section 846.   Do you understand that charge?

8               DEFENDANT PUCKETT:   Yes, sir.

9               THE COURT:   And you've discussed it with your attorney?

10               DEFENDANT PUCKETT:   Yes.

11               THE COURT:   Are there any questions you want to ask me

12   about the charge?

13               DEFENDANT PUCKETT:   No.

14               THE COURT:   This case carries a term of not less than

15   five years nor more than four years.   It carries a maximum fine

16   of up to two million dollars.   Upon judgment of conviction, you

17   must be imprisoned in the Bureau of Prisons for a mandatory

18   minimum period of five years.   It's not probationable.   After

19   any term of imprisonment, you would be ordered to serve a term

20   of supervised release of at least four years and up to life, and

21   you would be ordered to pay a special assessment of $100.   Do

22   you understand all those possible consequences?

23               DEFENDANT PUCKETT:   Yes.

24               THE COURT:   I have before me a plea agreement.   It

25   consists of 13 pages and 27 paragraphs.   One of the paragraphs,

1  specifically number 15, has been stricken.  Is that your

2  signature on the plea agreement?

3          DEFENDANT PUCKETT:  Yes.

4          THE COURT:  Has anyone forced you to sign this written

5  plea agreement?

6          DEFENDANT PUCKETT:  No, sir.

7          THE COURT:  Have any other agreements or promises been

8  made to you by any government agent or your attorney that are

9  not in this agreement?

10          DEFENDANT PUCKETT:  No.

11          THE COURT:  Did you read the document before you signed

12  it?

13          DEFENDANT PUCKETT:  Yes.

14          THE COURT:  Did you discuss all aspects of the document

15  with Mr. Cain, your attorney?

16          DEFENDANT PUCKETT:  Yes.

17          THE COURT:  Other than the plea agreement, has anyone

18  made any promises or assurances to you of any kind in an effort

19  to induce you to plead guilty in this case?

20          DEFENDANT PUCKETT:  No.

21          THE COURT:  Has anyone attempted in any way to force

22  you to plead guilty in this case?

23          DEFENDANT PUCKETT:  No.

24          THE COURT:  Are you pleading guilty of your own free

25  will?

1      DEFENDANT PUCKETT:   Yes.

2           THE COURT:   The United States Sentencing Commission has

3      issued advisory guidelines for judges to follow in determining

4      the sentence in a criminal case.   Have you and Mr. Cain talked

5      about how the sentencing guidelines might apply to your case?

6           DEFENDANT PUCKETT:   Yes.

7           THE COURT:   A sentence is determined by advisory

8      guidelines procedures.   All offenses are given a base offense

9      level.   The offense level may change through the application of

10     specific offense characteristics set out by the guidelines.   The

11     offense level may further change depending upon guidelines

12     considerations such as the nature of the victim, your role in

13     the crime, whether you obstructed or impeded the administration

14     of justice, and whether you accepted responsibility for your

15     actions.

16          After the offense level is established, the sentencing

17     range is fixed by ascertaining a criminal history category which

18     depends upon such things as prior sentences, your status when

19     the crime was committed, and how soon the crime was committed

20     after release from a prior imprisonment, if any.   The sentence

21     may be further affected by a departure contemplated by the

22     guidelines or by a variance, which is an adjustment outside the

23     advisory guidelines calculations.   When calculating the advisory

24     guidelines range, I must consider relevant conduct, which may

25     include conduct for which you may not have been charged.   In

1    determining the sentence, I must consider the factors outlined

2    in Section 3553(a) of the Criminal Code.

3            The plea agreement contains an estimate of what the

4    sentencing range will be, but it is important for you to realize

5    that I have to independently determine your sentencing range,

6    and it's my decision that counts.  I will not be able to

7    determine the advisory guidelines range for your case until

8    after the presentence report has been completed and you and the

9    government have had an opportunity to challenge the reported

10   facts and the computation of the guidelines recommended by the

11   probation officer.  The guidelines range determined by me may be

12   different from any estimate your attorney may have given you.

13           Because there is no agreement as to the sentence in

14   this case, the decision of the sentence is left to me after I

15   read the presentence report, hear from any witnesses, and hear

16   from you, your lawyer, and the government.  I will do my best to

17   arrive at a sentence which in my opinion is fair in

18   consideration of the factors contained in Section 3553(a),

19   including the sentencing guidelines and all of the applicable

20   facts and circumstances in this case, but I am not bound by any

21   sentencing guidelines calculations by the lawyers or by their

22   recommendations, and you cannot withdraw your guilty plea if you

23   are unhappy with the sentence, guidelines calculations, or

24   because I do not accept the recommendations of the government or

25   your lawyer.

1        Do you understand all those things I've told you about

2 sentencing?

3        DEFENDANT PUCKETT:  Yes, sir.

4        THE COURT:  You have retained Mr. Cain to assist you.

5 If you choose to plead not guilty, you would have the right to

6 the assistance of counsel at trial, as well.  If you choose to

7 plead not guilty and you no longer had the funds to hire an

8 attorney, I would appoint an attorney to represent you at trial

9 at no cost to you.  Do you understand that?

10        DEFENDANT PUCKETT:  Yes.

11        THE COURT:  And you understand you have a right to

12 plead not guilty and persist in your plea of not guilty.

13        DEFENDANT PUCKETT:  Yes.

14        THE COURT:  If you plead not guilty, you have a right

15 to a public and speedy trial, a right to be present throughout

16 that trial, and a right to see and hear all the witnesses called

17 to testify against you.  Your attorney will have the opportunity

18 to cross-examine the witnesses against you.  You would have the

19 right to present evidence, and you may use the subpoena power of

20 the court to obtain the attendance of witnesses on your behalf.

21        You have a right to a jury trial where the jury

22 considers the evidence, applies the law to the evidence, and

23 finds you not guilty or guilty.  The trial could also be by a

24 judge without a jury where the judge considers the evidence,

25 applies the law to the evidence, and finds you not guilty or

1    guilty.   A trial by a judge without a jury would occur only if

2    you, the government, and I all agree to this procedure.

3          At trial you would have the right to testify.   You

4    would also have the right not to testify.   And no inference or

5    suggestion of guilt could be drawn from the fact that you do not

6    testify.   You would also have the right to be protected from

7    compelled self-incrimination.

8          At either a jury trial or a trial before the judge, you

9    would be presumed to be innocent, and in a jury trial the jury

10   would be so instructed.   The government would be required to

11   prove you guilty by competent evidence beyond a reasonable doubt

12   before you could be found guilty by a judge or jury, and you

13   would not have to prove that you were innocent.   You could rely

14   on the presumption of innocence.

15         In a jury trial, the jury would be composed of twelve

16   persons.   You and your attorney would have the opportunity to

17   exclude jurors for cause if bias or disqualification is shown.

18   You may also exclude up to ten jurors for any reason except

19   based on race or gender.

20         In a jury trial, in order to find you guilty on the

21   charge, all twelve members of the jury must vote that you are

22   guilty on this charge and return that guilty verdict into open

23   court.   If all twelve vote that you're not guilty, you could not

24   be charged with this crime again.   If the jurors are split, some

25   for guilty, some for not guilty, the government could ask that

PDF created with pdfFactory trial version www.pdffactory.com

1  you be tried over again on this charge.

2         If you enter a plea of guilty and if that plea is

3  accepted by the court, there will be no trial of any kind, and

4  you will have waived or given up your right to trial, as well as

5  those other rights associated with the trial as I have just

6  described them  If you plead guilty, you will be waiving any

7  nonjurisdictional issues you could have raised at trial or in a

8  pretrial motion, and you will not be able to raise those issues

9  on appeal.  You will also not be able to appeal my ruling on the

10  pretrial motion I made on your motion to quash arrest and

11  suppress evidence.

12         Do you understand all those things I've told you about

13  your trial rights?

14             DEFENDANT PUCKETT:  Yes, sir.

15             THE COURT:  Please listen carefully to what the

16  government's attorney has to say.  Mr. Karner, will you please

17  summarize what the government's evidence would be with respect

18  to this case if it were to go to trial.

19             MR. KARNER:  Yes, your Honor.  On July 24th, 2009,

20  defendant and his codefendant, Troy Neely, made arrangements to

21  have a shipping container that contained 505 pounds of marijuana

22  delivered to a vacant lot located on Crowley Street in Rockford,

23  Illinois.  They arranged to have another individual take

24  delivery of the shipping container.

25             After the container was delivered to the Crowley

PDF created with pdfFactory trial version www.pdffactory.com

1    address, defendant and Neely arrived at the Crowley address and

2    unloaded the marijuana from the container into a rental van.

3    Defendant and Neely then drove the rental van to a private

4    residence on the west side of Rockford where they unloaded the

5    marijuana with the intent to distribute it.

6          THE COURT:  Mr. Puckett, have you heard the statement

7    of the Assistant United States Attorney?

8          DEFENDANT PUCKETT:  Yes.

9          THE COURT:  Is it correct?

10          DEFENDANT PUCKETT:  Yes.

11          THE COURT:  Do you disagree with any part of the

12    statement?

13          DEFENDANT PUCKETT:  No.

14          THE COURT:  Did you, in fact, commit the offense as

15    stated?

16          DEFENDANT PUCKETT:  Yes.

17          THE COURT:  As to the indictment, how do you wish to

18    plead, guilty or not guilty?

19          DEFENDANT PUCKETT:  Guilty.

20          THE COURT:  Mr. Cain, is there any reason that occurs

21    to you why the defendant should not plead guilty?

22          MR. CAIN:  No, sir.

23          THE COURT:  I find that the defendant has been advised

24    of his rights and understands them  I find that the defendant

25    is aware of the nature of the charge, the consequences of the

1  plea, and the possible punishment, that there have been no

2  threats against the defendant to coerce him to plead guilty, and

3  that the plea of guilty is a knowing and voluntary plea

4  supported by an independent basis in fact containing each of the

5  essential elements of the offense.  The plea is therefore

6  accepted, and the defendant is now adjudged guilty of that

7  offense.  I will order a presentence investigation and set a

8  sentencing hearing.

9          THE CLERK:  Around February 8th.

10          THE COURT:  February 9th at 2:30.

11          MR. KARNER:  That's fine with me.

12          THE COURT:  Is that date convenient for you, Mr. Cain?

13          MR. CAIN:  Yes, sir.

14          THE COURT:  Mr. Karner?

15          MR. KARNER:  Yes, sir.

16          MR. CAIN:  You set it at 11:00?

17          THE COURT:  11:00?

18          MR. CAIN:  Is that what you said?

19          THE COURT:  2:30.

20          MR. CAIN:  2:30 is fine.

21          THE COURT:  Osic, in connection with the presentence

22  investigation, you will be interviewed by a probation officer.

23  During your interview with the probation officer, be truthful in

24  any answer you may give.  If you are not truthful, you could

25  commit obstruction of justice under the sentencing guidelines

1    which may result in an increase of your offense level, and

2    possibly you could lose consideration for acceptance of

3    responsibility.  Your lawyer should be present during any

4    interview.

5            The last sentencing that I had the defendant didn't

6    tell the truth to the probation officer during the presentence

7    interview and got an increase of his offense level because of

8    obstruction of justice.  So, it's very important for you to

9    truthful and forthright when you talk to the probation officer

10   during your interview.  All right?

11           DEFENDANT PUCKETT:  Yes, sir.

12           THE COURT:  I'll order the defense to file any

13   objections to the report before the sentencing hearing.  I urge

14   the parties to read the time deadlines set out in the sentencing

15   hearing and strictly comply with them  Please follow the

16   deadlines in the sentencing order.  If you don't, the time that

17   I can consider this case is compressed, and it causes a lot of

18   problems, anticipated and unanticipated.  So, please do your

19   best to give me any objections before the date set out in the

20   sentencing order.

21           I'll remand the defendant.  How much time do you need

22   to make those phone calls?  Maybe Mr. Cain can help you or I can

23   help you if --

24           DEFENDANT PUCKETT:  Probably like an hour or so.

25           THE COURT:  All right.  Frank, what about quarter after

PDF created with pdfFactory trial version www.pdffactory.com

1      12:00?  Would that be all right?

2                THE MARSHAL:  That will work, sir.

3                THE COURT:  You can leave the courtroom  You can go

4      about the courthouse, if you want.  Please come back at quarter

5      after 12:00.

6                MR. CAIN:  And he is to report where at quarter after

7      12:00?

8                THE COURT:  Right here.

9                MR. CAIN:  Right here?

10               THE COURT:  Right here.

11               MR. CAIN:  You don't need me, do you?

12               THE COURT:  No.  No.  Frank, if he reports here, that's

13     all right?

14               THE MARSHAL:  Yes.  Just don't leave the building.

15     That's all.

16               THE COURT:  Okay.  Just stay in the building, Osic.

17               MR. KARNER:  Anything else?

18               THE COURT:  Pardon me?

19               MR. KARNER:  Anything else?

20               THE COURT:  No.  We're all set.  Court's in recess.

21          (Which were all the proceedings had in the above-entitled

22            cause on the day and date aforesaid.)

23

24

25

1       I certify that the foregoing is a correct transcript from

2  the record of proceedings in the above-entitled matter.

3

4

5  Mary T. Lindbloom
    Official Court Reporter

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25